UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

THE COURIER-JOURNAL, INC.                                                                     PLAINTIFF

v.                                                               CIVIL ACTION NO. 3:09CV-449-S

LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT                      DEFENDANT

## MEMORANDUM OPINION

In this action, Plaintiff, the Courier-Journal, Inc. ("the Courier"), seeks to preclude enforcement of Ordinance No. 87, Series 2009 (0-63-04-09) passed by Defendant, Louisville/Jefferson County Metro Government ("Metro"), and signed into law by Mayor Jerry Abramson on June 25, 2009. The ordinance requires that unsolicited written materials delivered to any premises be placed in a distribution box, on the front porch, through a mail slot, be securely attached to a front door or exterior of a mailbox, be placed between an exterior and interior front door, or be delivered personally to the owner of the premises. The Courier seeks a preliminary injunction to preclude enforcement of the ordinance (DN 11), urging that it is unconstitutional, as it (1) impermissibly restricts the newspaper's traditional home delivery of written materials, (2) is not narrowly tailored to achieve the ordinance's stated goals, and (3) fails to allow for adequate alternative channels of communication. (Motion for Prelim. Inj., p. 16; Reply Brief, pp. 1-2).[1]

In seeking a preliminary injunction, the Courier must "establish that [it] is likely to succeed on the merits [of its claim], that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, ___U.S.___, 129 S.Ct. 365, 374 (2008); *Chabad*

---

[1] The effective date of the ordinance was August 24, 2009. Metro agreed to refrain from enforcing the ordinance pending resolution of the Courier's motion. (August 3, 2009 Agreed Order).

*of Southern Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004). The factors must be balanced, with no single factor being given controlling weight. *Frisch's Restaurants, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985), *quoting, In re DeLorean Motor Co.,* 755 F.2d 1223 (6th Cir. 1985).

The essential facts underlying this matter are not in dispute.[2]

Each week, the Courier delivers approximately 340,000 "green baggies" which are thin, translucent plastic sleeves containing unsolicited written materials to non-subscribers to the Courier-Journal newspaper.[3] These baggies contain a conglomeration of advertisements along with items of community news and current events. The Courier also distributes free special interest publications from time to time, and free copies of the newspaper in an effort to interest non-subscribers in subscribing to the paper. The Courier also distributes a quantity of newspapers on behalf of the Office of the Mayor to low income residents.

Thirty percent of the home-delivered baggies are delivered on or near porches. The Courier candidly states that while it has a policy to deliver these materials as close to the porch or front door as practicable under the circumstances, many of the "green baggies" do not actually get delivered on the porch or to the front door. Only about 15% of the materials are placed in distribution boxes or tubes. About 16% of the "green baggies" are left outside of locked apartment buildings, and 17%

---

[2]The Courier urges that the extent of the littering problem was not clearly established, and therefore it questions Metro's justification for enacting the ordinance. However, the Courier does not dispute that there was some documentation and anecdotal evidence offered at the public hearing to substantiate Metro's concern. Nor does the Courier deny that Metro bears the responsibility to address issues which concern its constituents, and to legislate when necessary. With respect to Metro's justification, we note that a "government must come forward with *some quantum of evidence beyond its own belief* in the necessity for regulation that the harms it seeks to remedy are concrete and that its regulatory regime advances stated goals." *Pagan v. Fruchey*, 492 F.3d 766, 771 (6th Cir. 2007). We find it likely that the legislative record would be found adequate to justify metro's action in this matter.

[3]Facts concerning the delivery of unsolicited materials have been taken from the affidavit of Larry James, Circulation Operations Manager for the Courier.

are left on driveways, yards, paths, or in other locations.[4]  Metro has dubbed this last method of delivery the "fly and fling," noting that these deliveries, made ordinarily between 3:00 and 7:00 a.m. on Wednesdays and Sundays, involve no contact with residents or business owners.  Metro's concern was that the baggies were found generally strewn about the premises, rather than being deposited with or in the proximity of the recipient's door.  Metro sought to remedy what it determined to be a proliferation of litter around the county from the perceived "haphazard delivery" of such materials.  Indeed, the preamble clauses of Ordinance 87 state:

> **WHEREAS**, the legislative council of Louisville/Jefferson County Metro Government ("Metro Council") is concerned about the proliferation of litter in the community; and
>
> **WHEREAS,** it has come to the attention of the Metro Council that deliveries of unsolicited written materials are being haphazardly delivered throughout Metro Louisville by distributing such materials on sidewalks, yards, and driveways with no means to ensure that such items do not add to the litter problem created; and
>
> **WHEREAS,** the Metro Council has determined that these unsolicited written materials have contributed to the litter and visual blight of private premises, public streets, sidewalks, and other public places as well as damaging property, including but not limited to, causing or contributing to sewage and/or drainage backups; and
>
> ...
>
> **WHEREAS**, this Ordinance is an effort to reduce unwanted litter and visual blight caused by unsolicited written materials...

Ordinance No. 87, pp. 1-2.

The topic of regulating the distribution of unsolicited written materials was first broached in 2007 in response to a number of e-mails and letters to council members regarding a proliferation of bright orange plastic bags containing advertisements littered throughout Jefferson County.  The Courier objected to the then-proposed ordinance, and it later died in committee.  *see*, Legislative Record, O-126-05-07.

---

[4] James' Affidavit states that approximately 28% of the baggies are delivered to apartment buildings if such buildings are unlocked and the materials can be left inside the building.  He does not state what happens to the materials if the premises are locked.

A second version of the proposed ordinance was introduced at the April 23, 2009 Metro Council meeting. The matter was assigned to the Public Safety Committee for review. At the May 5, 2009 committee meeting, Councilman Brent Ackerson, a sponsor of the ordinance,[5] related complaints from several constituents, and submitted photographs of the Courier's advertising packets lying in driveways and on rights-of-way. The matter was then tabled until a public hearing could be held. At a public hearing held May 19, 2009[6], comments were heard from:

(1)  Citizen speakers;

(2)  Bud Schardein, Executive Director of the Metropolitan Sewer District;

(3)  Sgt. Robert Biven, Louisville Metro Police Department;

(4)  Cynthia Knapak, Operation Brightside;

(5)  Paul Schuhman, Upper Highlands Neighborhood Association;

(6)  Joan Noles, City Commissioner for the City of Wellington;

(7) Susan Melcher, Mayor, City of Kingsley; and

(8) Jon Fleischaker, counsel for the Courier.

In addition to anecdotal comments of constituents and representatives concerning the litter of advertising materials in their neighborhoods, Bud Schardein commented on sewage clogging caused by plastic caught in catch basins, and Sgt. Biven noted the security risk in the accumulation of uncollected materials outside residences.[7] A number of constituents voiced some dissatisfaction with the effectiveness of the Courier's "Do Not Deliver" list through which they had requested that

---

[5]The sponsors included Brent Ackerson, District 26, Jon Ackerson, District 18, Jim King, District 10, Robert Henderson, District 14, Marianne Butler, District 15, Vicki Aubrey Welch, District 13, Rick Blackwell, District 12, James Peden, District 23, and Kelly Downard, District 16.

[6]The following undisputed facts are found in the record of the hearing.

[7]The accumulation of papers and advertising materials evidences to thieves that a residence may be vacant.

unsolicited materials not be delivered to their premises.[8] A number of comments indicated that there was lax enforcement of the requests to eliminate these deliveries.

The Courier indicated at the hearing that its policy was to place the "green bags" as close to the front door of the premises as possible, but that it was not feasible to do so in certain areas. While acknowledging the legitimate concern of Metro with litter, it urged that the proposed ordinance did not leave open an economically feasible alternative for distributing its materials to the community. It stated that the ordinance's restrictions would impose upon it inordinate additional cost and logistical problems. The Courier noted that its "Do Not Deliver" list affords those who do not wish to receive the materials an option to opt out of delivery, while permitting others to continue to receive "green baggies" in the current manner. The Courier suggests that increased utilization of the "Do Not Deliver" list would serve the interest sought to be protected by the ordinance without unduly burdening its "traditional method" of delivery of its materials. Additionally, it proposed to (1) cease distributing multiple copies of the materials outside of multiple-resident dwellings, (2) increase the visibility and accessibility of the "Do Not Deliver" list, (3) honor *bona fide* requests of streets or blocks where residents do not want to receive the materials, and (4) step up enforcement of the "Do Not Deliver" list with its carriers. (May 28, 2009 Letter, Courier-Journal to Ackerson).

In evaluating the Courier's likelihood of success on the merits, the court must first determine under which degree of scrutiny this ordinance should be evaluated. The Courier urges that the ordinance unduly restricts the delivery of the newspaper's product, that a newspaper's home delivery of written material "lies at the heart of First Amendment guarantees," and, as such, that the Supreme Court has given special protection to this traditional method of communication, *citing City of Ladue v. Gilleo*, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36(1994). Metro counters that the Courier's "fly & fling" method of distributing its "green baggies" by depositing them on driveways, in yards,

---

[8]The phone number for individuals to call and request to be added to the "Do Not Deliver" list is printed on the "green baggies."

and on roadways for later retrieval is not the "traditional method of communication" subject to highest scrutiny.

In *Turner Broadcasting System, Inc. v. Federal Communications Commission,* 512 U.S. 622, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994), the United States Supreme Court found intermediate scrutiny applicable to content-neutral restrictions that impose an incidental burden on speech. Ordinance No. 87 is content-neutral, having application to all unsolicited written materials without regard to content. The ordinance does not *preclude* speech; that is, it does not preclude the delivery of the message, but only the manner in which delivery is made. As in the *Turner* case, nothing in the ordinance before us "distinguishes favored speech from disfavored speech on the basis of the ideas or views expressed." *Id.* at 2459; *see also, Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)(ordinance prohibiting posting of signs on public property "neutral–indeed it is silent–concerning any speaker's point of view").

The Courier attempts to turn the analysis on its head, urging that because the ordinance applies to unsolicited written materials but not to the materials recipients specifically request, the ordinance thus presumes that silence on the issue amounts to a desire not to receive information. The Courier then concludes that Metro is usurping the decision whether to accept or reject unsolicited written material, rather than "leaving the decision as to whether distributors of literature may lawfully call at a home where it belongs–with the homeowner himself." *Quoting, Martin v. City of Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed.2d 1313 (1943). Nothing could be further from the truth. This case is distinguishable from *Martin* which involved door-to-door solicitations by a Jehovah's Witness. The Jehovah's Witness' visit to the door to engage the resident and distribute literature is clearly distinguishable from the Courier's "green baggie" driveway delivery system.

Metro colorfully describes the Courier's delivery methods as the "fly-and-fling method of distribution, accomplished under cover of darkness," the "toss-and-take off medium of expression," a "haphazard throw-and-go distribution method," and "materials...surreptitiously dumped." Stripped of rhetoric, the salient point Metro makes is that the Courier's method of delivering the "green baggies" cannot be logically equated with door-to-door solicitations or leafleting on a public street corner, traditional methods of expression which have been subject to exacting scrutiny under constitutional analysis. We agree. The recipient of the Jehovah's Witness' message is afforded the opportunity to accept or reject the message at his door, while the recipient of the "green baggie" is afforded no such opportunity. Thus Metro's enactment of Ordinance No. 87 usurps nothing from the recipient's freedom of choice in the situation, as the recipient has none. This point was made in *Jobe v. City of Catlettsburg*, 409 F.3d 261 (6th Cir. 2005) in which the United States Court of Appeals for the Sixth Circuit held that

> The [leafletting][sic] right recognized in *Schneider* [*v. New Jersey*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939),] is to tender the written material to the passerby who may reject it or accept it, and who thereafter may keep it, dispose of it properly, or incur the risk of punishment if he lets it fall to the ground.

*Jobe*, 409 F.3d at 264, *quoting, Taxpayers for Vincent*, 104 S.Ct. at 2118.

The cases upon which the Courier relies are distinguishable in a number of respects. First, virtually all of the cases involved restrictions on door-to-door solicitations or activity in the genre of street corner solicitation, as opposed to the Courier's presentation to the driveway or front lawn of unknowing recipients. Additionally, despite the Courier's protestations to the contrary, the speech in issue here is purely commercial. Directly or indirectly, the "green baggies" are designed to increase Courier-Journal revenues, be it through the distribution of advertising materials for local businesses, distribution of neighborhood and special interest publications to foster interest in new subscriptions to the paper, or through the cultivation of goodwill through its cooperative effort with the mayor in providing the paper to low-income families. The Courier indicated in its public

opposition to the proposed ordinance that the ordinance's enactment would create a purely fiscal problem for it to comply with the proposed delivery restrictions. (*See,* Record of Public Safety Committee Hearing).

In order to find that the ordinance does not pose an impermissible burden on speech, the court must determine that the ordinance imposes reasonable restrictions on the time, place, and manner of delivery. In evaluating the restrictions, the court must assess whether it curtails no more speech than necessary to accomplish the ordinance's purpose. *Jobe*, 409 F.3d at 265; *Taxpayers for Vincent*, 104 S.Ct. at 2118. In the seminal case of *Schneider v. State of New Jersey,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939), the United States Supreme Court stated that

> Although a municipality may enact regulations in the interest of the public safety, health, welfare or convenience, these may not abridge the individual liberties secured by the Constitution to those who wish to speak, write, print or circulate information or opinion...So long as legislation...does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using the streets...For example,...a group of distributors could not insist upon a constitutional right to form a cordon across the street and to allow no pedestrian to pass who did not accept a tendered leaflet; nor does the guarantee of freedom of speech or of the press deprive a municipality of power to enact regulations against throwing literature broadcast in the streets. Prohibition of such conduct would not abridge the constitutional liberty since such activity bears no necessary relationship to the freedom to speak, write, print or distribute information or opinion.

*Schneider*, 60 S.Ct. at 150. In *Jobe, supra.*, the Sixth Circuit upheld an ordinance which prohibited individuals from placing leaflets on car windshields without the owners' consent. The court stated that in order to "qualify as a reasonable time-place-and-manner regulation of speech, the law must (1) be content-neutral, (2) serve a significant government interest, (3) be narrowly tailored to serve that government interest and (4) leave open ample alternative channels of communication." *Jobe*, 409 F.3d at 267, *quoting, Taxpayers for Vincent*, 104 S.Ct. at 2130. The court went on to state:

> "[W]hen a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal." *Hill* [*v. Colorado*, 530 U.S. 703, 726, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000)]. "Rather, the requirement of narrow tailoring is satisfied so long as the ...regulation promotes a

>substantial government interest that would be achieved less effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.S. 781, 798, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)(quotations omitted); *Prime Media*[, *Inc. v. City of Brentwood*, 398 F.3d 814, 818, 819 (6th Cir. 2005)].

We have already determined that Ordinance No. 87 is content-neutral. The preamble clauses clearly reflect the government interest which the legislation was designed to serve. Metro was concerned with haphazard delivery of unsolicited materials which were found to contribute to the litter and visual blight of private premises, public streets, sidewalks, and other public places, to contribute to sewer and drainage backups, and to create visual blight in neighborhoods. In fact, the Courier does not dispute as a general proposition that the interest in curbing litter in the community is significant.

We have already determined that, based upon the legislative record, Metro could likely establish concrete harm in this case and the need to enact an ordinance to ameliorate the problem. *See, Pagan*, *supra*. As in *Jobe*, we find it likely that Metro can establish that "the application of the ordinance in this case responds precisely to the substantive problem which legitimately concerns the City." *Jobe*, 409 F.3d at 269. The method of distribution in *Jobe*, leafleting on car windshields, was legitimately curtailed in order to reduce littering and visual blight in the city of Catlettsburg. So, too, this court would likely find that the requirement that unsolicited written materials be placed between doors, on the porch, secured to a door or mailbox, or delivered to the resident directly, responds to the problem of visual blight and litter throughout the county, and that compliance with these restrictions would assist in achieving the stated purpose of the ordinance.

We also find it likely that Metro will succeed in establishing that the ordinance's restrictions do not curtail any more speech than necessary to accomplish its stated goals. It appears that the deliveries which are the most logistically problematic for the Courier are the most environmentally problematic for the community. Metro contends that the curtailment of unrestrained delivery of unsolicited written materials; that is, "fly and fling" deliveries, will reduce visual blight and litter.

Deliveries of "green baggies" to these same locations is not in any way prohibited as long as the delivery is made by one of the approved methods. Nor is there any restriction on "flying" or "flinging" as long as the fling places the "green baggie" on the front porch. The approved delivery methods as a whole are designed to secure the "green baggies" in some fashion, and to make them more closely accessible for retrieval and retention or disposal by the resident. We conclude on this basis that Metro can likely show that the ordinance is narrowly tailored to serve Metro's interest and that ample alternative channels for this communication, six in all, are left open for distributors of such materials.

The Courier contends that *it* does not have ample alternatives to its current distribution methods because compliance with the ordinance in certain areas of the county would be cost-prohibitive. The purported lack of economically feasible alternatives for the Courier is not a basis upon which to find the ordinance unconstitutional. *See, The Pitt News v. Fisher*, 215 F.3d 354, 366 (3d Cir. 2000)("The fact that *The Pitt News* is a newspaper does not give it a constitutional right to a certain level of profitability, or even to stay in business at all. *The Pitt News* 'proceeds on the erroneous premise that it has a constitutional right not only to speak, but to speak profitably.'").[9]

We further find that the Courier will not likely succeed on its claim that the penalty provision in the ordinance violates the Excessive Fines Clause of the Constitution, inasmuch as the provision caps the fine at $200.00 per violation. The Supreme Court stated in *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) that courts should grant substantial deference to the broad authority of legislatures in determining types and limits of punishment. The court must look for "gross disproportionality" between the offense and the fine which is not apparent here. The legislature indicated that the penalty provision was designed to have a deterrent effect on those who

---

[9] We find the Courier's citations to *Miller v. City of Laramie,* a Wyoming state court case, *City of Ladue, Ad-World*, and *Horina v. City of Granite City,* a 7th Circuit case which is contrary to the binding Sixth Circuit authority of *Jobe*, to be inapt.

distribute unsolicited written materials. We find that the fine range will likely achieve this end without being disproportionate to the conduct for which it would be imposed.

Based upon the foregoing analysis, the court concludes that there is little likelihood that the Courier will succeed on the merits of its claims. As we conclude that Ordinance No. 87 will not likely be shown to violate the constitutional rights of the Courier and others, we also conclude that the irreparable harm deemed to ordinarily flow from such violations has likewise not been shown. *See, Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976). We need not balance the consideration of harm to others in granting an injunction in this instance. We do find that the granting of an injunction in this case is not in the public interest. While the Courier correctly notes that it is always in the public interest to prevent violation of a party's constitutional rights, *Chabad of Southern Ohio, supra.,* we note too that it is in the public interest that the community be afforded the benefits of legitimate and necessary legislation enacted on its behalf. As we have found that the Courier has not met the requisites for issuance of a preliminary injunction, its motion will be denied. A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

September 11, 2009

**Charles R. Simpson III, Judge**
**United States District Court**